Matthew Cormack from Davis Polk & Wardwell on behalf of the appellant Charles Manley and I will try to reserve three minutes. The record in this case reflects a fundamental disagreement about the critical facts surrounding Manley's excessive force claim. Did the defendants as Manley testified beat him and drag him by his shackles in a malicious and sadistic attempt to cause him injuries? Or, as the defendants claimed, did they only use the force necessary under the circumstances? Now, as the magistrate in this case recognized, that is a factual dispute that the jury must decide. And the district court took a different path, and in doing so noted that when he'd gone down this path before, this court, in at least three separate instances, had reversed the grant of summary judgment and remanded for trial. And the reason that this court did so in those three cases is the same reason it should do so here. The district court sat as a juror, weighed the facts, and determined that the non-moving party's testimony should not be believed, and that a jury would likely not believe it, and that summary judgment was therefore appropriate. Counsel, let's just assume, argumentally, that I agree with you that Judge Jones played the role of the juror here, that that was improper for purposes of a summary judgment motion. You have nonetheless asked that we send this case back to a different judge. Yes. Judge Jones has an interesting recent history, but focusing on this particular request, you know that it's a very heavy burden that a party bears to have a matter allocated to a different judge. What do you believe are the most pressing and important legal reasons why you think this case, if we agree with Sherpa, but at your point, should be sent to a different district judge? And I do completely recognize it is a very extreme remedy, and do not make the request lightly at all, but I believe that this is an extreme situation, and I think footnote one of the district court's decision is beyond even the other cases in which this court has reassigned from Judge Jones, because what you have first in the opinion is a prejudgment of the proper outcome at trial, and that is Manley shouldn't be believed. His testimony is worthless, and therefore he would lose at trial. Now that, I think, is enough for reassignment. That was United States v. Quagg and Head, in which cases were reassigned from Judge Jones, for expressing on the record his opinion about the case. But I think this case goes even further, and I'm not aware of any case where I've seen a similar scenario, where not only did Judge Jones express his opinion about the merits of the case, but he viewed victory at trial for the defendants as vindication of his decision to grant summary judgment in the three other cases, suggesting that here he would view a Manley loss at trial as vindication of his decision at summary judgment, because he has predicted how the outcome will happen, because he believes that he has a better view of what will happen in his court than the judges on the Ninth Circuit. And so I believe that. But there still is a jury and a remand. If we were to remand, there would be a jury, and either you or other competent counsel would be representing your client, and appropriate challenges can be made. I'm not sure that you've laid out enough yet to establish that we have to reassign. If we were to reassign, I fully appreciate it. And I would note that we have asked for counsel to be appointed on remands. I do think that that would certainly help the situation. But I don't know that if you look at it from an objective observer, I think that there is certainly an appearance that it is not fair to have a judge overseeing a case when that judge has indicated that he essentially has a vested interest in the outcome. He will be vindicated if Manley loses at trial. Now, it very well could be that despite that, there could be a fair trial, and proper objections could be made, and all of the decisions could be right. It's very possible that that's how the trial could happen. It's possible, even under that scenario, Manley may lose. Are you aware of any case right on point here where a judge has, as you put it, a vested interest in the outcome of the case based upon any preliminary summary? I think the cases that we cite, which are United States v. Quagg and Hank, which are Judge Jones' cases, are not on point, but the facts are actually more or less severe. Because in that case, Judge Jones just made comments on the record that were very one-sided. And I think that would be the equivalent here of taking out footnote one of his decision. So he said Manley's testimony was virtually worthless. That's a comment on the merits of the case. Are we limited in our consideration of this particular matter to Judge Jones' actions in connection with this case, or are we permitted to look at larger issues, such as refusing to have main justice attorneys appear, product fee chance, et cetera? Are those matters outside the bounds of our consideration when we decide, if we've agreed with you, to send this to a different judge? So I think that this Court has, in other cases in which they've reassigned from Judge Jones, noted those prior instances. Now, I'm not sure if that factored into the decision or was simply something that was being noted on the record in an attempt to try to ensure more compliance with the rulings of this Court. But I think you could look just at the record in this case and be pretty confident that at least, again, this is the appearance of someone looking at this trial where Judge Jones has suggested that Manley should lose, and if he does, he will be right and you will be wrong if you end up reversing on summary judgment. Counsel, let's go on to the other issue. What about the finding that Manley had failed to exhaust his Eighth Amendment claim against Officer Zimmer? Sure. So that deliberate indifference claim was exhausted in Grievance 7715, and that was not addressed at all by the magistrate judge or the district court and is only barely addressed by the defendants. And in that grievance, Manley said that he should not have been punished for the incident because he repeatedly asked to be removed from his cell, and Zimmer denied those requests, and the fight ensued. And I think under this Court's precedent in Griffin and Reyes, that put the defendants on notice of what he alleged was the problem. What was it that put the prison on notice? Did he file the typical complaint that he should under prison rights? Yes, he filed – well, at the time, he didn't have the time to file a grievance to be removed from his cell. He made a bunch of complaints. He buzzed the officer, but then after the fact, he did file a grievance, which is not contested that this grievance was exhausted. It's 7715 in the record at page 127, and that grievance is not discussed by the magistrate or the district court, despite being before them. And it says that the reason the incident occurred is because he was not removed despite these repeated failures or his repeated attempts to be removed. And I would also note that we also think that a stay should have been considered as well, even if it had not been exhausted. That's the normal procedure, and the PLRA does not foreclose it. Let's assume for a moment, putting aside what you just talked about there, that the district judge is there to grant a stay or dismiss without prejudice. I wonder how your client was prejudiced, because in this case, as I understand it, the time for him to exhaust any administrative remedies on remaining items had passed. How was your client prejudiced under those circumstances? So the time to exhaust, there may be procedural bars to exhaustion, but the prison, in its discretion, could consider those arguments and could choose, despite the procedural defects, to consider the claim. That's the Reyes case. And so he could have gone back and exhausted. If you could sit here. I'll give you about a minute and a half. You may wish to reserve. I would like to. Thank you very much. We'll hear from the State. Good morning, Your Honors. May it please the Court. My name is Lawrence Van Dyke, and I'm here on behalf of the State of Nevada Appellees. Unless the Court would prefer a different approach, what I'd like to do is talk first about the exhaustion issue with regard to Sergeant Zimmer and then move on to the excessive force claim, Your Honors. Manley relied on two different grievances. You heard the reference to what I'll call 715 grievance, and then he also relied on 799 grievance. Those are the last three numbers of both grievances. I think I'm not sure whether Manley is still relying on 799. He clearly didn't take that to the second level, so I think that one's pretty straightforward, which is why he's relying on 715. But there's at least three reasons, Your Honor, why I think he both felt exhausted and, indeed, even waived his arguments with regard to 715. First of all, if you read 715, Manley isn't even grieving Zimmer's actions in 715, and I think we can tell that in two different ways. One is the relief he actually asked for in 715 is he asked for that the, quote, charges should be dismissed, excerpt from record page 62, and then in the second level he again says, yes, the, quote, this write-up should be dismissed, excerpt from record page 67, and the reason he's asking for that is if you look at the grievance, he's claiming that the hearing, the disciplinary hearing that he had because of these actions, came about too late, and so that's what he's asking for. So, number one, that's what he's asking for. The other way you can tell that is not only is the remedy that he's asking for not something against Zimmer, but he actually specifically says he's not blaming Zimmer. If you read in the informal grievance, that would be the first level grievance in the Nevada system, excerpts of record page 62, he says, he, referring to Zimmer, if you look at it, he says, he nor either state prison are responsible for what happened in the cell. However, neither is inmate Manley. So, both the remedy he's seeking and he actually specifically, you don't usually even have this, but in this case, you actually have the prisoner specifically disclaiming that he's blaming Zimmer. Secondly, Your Honor, if it did include a grievance against Zimmer, it clearly includes a grievance against this disciplinary hearing being held too late, and so if it did include a grievance against Zimmer, then he impermissibly included two different issues in the same grievance, which would be another reason that he failed to properly exhaust the state. But the last reason I want to point out to the court, you've heard it, it's in the briefs and you've heard it again this morning, that both the magistrate judge and the district judge didn't address 715, and there's a very good reason for that, and that is because Manley didn't raise 715 in response to the state's motion to dismiss at all. The state filed a motion to dismiss. Manley filed an opposition to the state's motion to dismiss, as well as in the same document, a cross motion for summary judgment. And then the state filed a reply and a cross opposition to his motion. And then Manley filed, finally, the fourth document was a reply in support of his motion to dismiss. He did not raise 715 until his reply in support of his motion to dismiss. So I think the best explanation for why both the magistrate judge and the district judge didn't address 715 at all is because he didn't raise it until his reply in support of his motion to dismiss. He did not raise it at all in response to the state's motion to dismiss. So I think he just waived it. And then he, of course, raised it when in his objections to the magistrate judge's ruling. But by that point, the magistrate judge, when he granted the state's motion to dismiss, didn't have the benefit of any discussion of that. So not only did he not agree, not only did he not exhaust it, but I think he waived it, which I think is the reason why the judges below did not address it, Your Honor. I don't think that he also argues that the district court should have stayed the case. I think, Judge Smith, your point is very well taken. I think that even ignoring the fact that I think Woodford and other cases foreclosed that, I think he's sort of asking for an advisory opinion here in regard to that because it is true that under the administrative regulations, 740.05, subsection 4, he has six months to raise a claim like this. He's obviously well past that point. And so it would just be an advisory opinion by this court, I think. And also, I think he would encourage inmates to sandbag on their grievances, which is precisely what the Prison Litigation Reform Act is intended to. Why don't you address the summary judgment issue? On the summary judgment, Your Honor, first of all, Manley claims that his testimony was corroborated by additional evidence. First of all, I'd really like to point out to the court, I don't think that that's true at all. All of the evidence, other than his testimony that the correctional officers beat him, all of the evidence in this case is as consistent or more consistent with what you can observe in the video, which is Manley in a fight with his cellmate, getting punched repeatedly in the face by his cellmate a bit of five minutes in. And so the only evidence of what Manley claims happened here is his uncooperated testimony. And as we pointed out in our recent Rule 28JA letter, it's not just that it's uncooperated. It's also flatly inconsistent, to quote the language from the Scott case, with the statements that his counsel made at his former criminal trial. And I want to point out to the court, this is not something where we have dug in the record and found some statement that's inconsistent, but, you know, can be rectified. If you look at that transcript from the criminal trial, his whole theory at his criminal trial was, keep in mind he was being charged with battering his cellmate, and his whole theory was, no, I didn't batter my cellmate. That was self-defense. How do we know it was self-defense? And you can see this in his counsel's closing argument. How do we know? Because the guards didn't beat me up. I didn't beat myself up. Hubbell, like his cellmate, beat me up. So it's a completely contradictory account. And I do want to point out to the court, the court may be asking itself, why did we only receive this contradictory evidence two weeks ago when I was speaking? I'd like to point this out because we obviously got a little beat up in response to our Rule 28-J letter. Candidly, Your Honors, I didn't come across this information until the Supreme Court argument a couple weeks ago, and so it obviously seemed to be very important information. But it wasn't in front of Judge Jones, was it? The portions of this transcript are in the record, and the reason they're in the record is because Manley presented these in the proceedings below. So certainly the transcript was. Whether or not this portion was, I'm not sure, Your Honor, whether or not this portion was. So in looking at this transcript, I came across this evidence, and I thought it was a pretty key issue, and I thought I would be remiss if I didn't bring it to the court's attention if there was a legal procedural way that I could do so. So I asked myself two questions. Had the argument been made, and is there a way I could, you know, should I, if the argument had been made, should I supplement the record or something like that? Well, as I note in the very first instance of the Rule 28-J letter, I think clearly the argument was made that his testimony was contradicted. And so then, because I thought this is, this is, the court can take it. Doesn't that raise a question of material fact? Because the argument had. In other words, which would prevent a summary judgment. Well, I don't think so, Your Honor. That's why I brought those authorities. We already made the argument based on Scott v. Harris, but I brought those additional authorities. I think when somebody has prior inconsistent testimony, you know, that's testimony from a theory that they brought in open court before. The cases we have are sworn depositions. But I don't see the difference between a testimony that your counsel made, a key theory, the key theory at his prior trial. I think I'd say to the counsel, it's a rare case where a district judge notes in a footnote basically that he seems to recognize this is some material fact that's in dispute, but he's going to decide it because he knows what the ultimate result is going to be. And just as proof of that, he had three prior cases where he was reversed by the Ninth Circuit for doing exactly the same thing, and the jury decided with him. Have you ever seen a case like that before? Actually, I think we see it all the time, Your Honor. Maybe this is fresh in my mind because I just argued a preliminary injunction hearing in the Fifth Circuit. But actually, in the preliminary injunction context, the very first factor in all the courts I'm aware of is, how do you think that it will come out on the merits? And so I actually think, you know, they make a big deal out of the fact that, oh, he prejudged the case, so to speak. But that happens all the time, and certainly in the preliminary injunction, we don't say that. A preliminary injunction is a little different, I would suggest. Here you're talking about disposing of an entire matter. A preliminary injunction basically just holds things in place. Here you're talking about disposing of an entire case. And the question is, who's the trier of fact? Under our system, there are certain things a judge could do. There are other things that are materially disputed that have to go to, if there's a jury involved, to a jury. And in this case, it seems like Judge Jones was, in effect, bragging that he was aware that he was involved with material facts or he was making a determination, but wasn't concerned because he'd been reversed three times before by the Ninth Circuit, and the jury vindicated him, so he was going to do it again. And now you read it. The way I read it, Your Honor, is I think he's making a forecast. There's no question he's making a forecast of how he thinks the jury is going to decide these facts. And I tend to agree with him on that forecast, Your Honor. I think judges can do – what I'm saying is I think judges can do that because they do that. The question is, can they still preside over the trial in a fair and unbiased manner? But that's a separate issue I'm talking about now. As far as the summary judgment is concerned, he clearly did it. The question is, was it appropriate for summary judgment? I think it's – certainly I wish that he had left foot in a lawn out of his opinion. I don't think it was necessary to his opinion. What I don't think, though, Your Honor, is that it somehow impermissibly taints him so that in the future he could not sit. Really, all you have is a judge saying, I think the case is going to come up, the jury is going to rule this way. But like I said, judges do that. I mean, that's what a directive verdict is too, Your Honor, saying, you know, the evidence is so far one-sided that maybe he got it wrong here. But, of course, judges get it wrong all the time. And counsel's main argument is that – No, no. Only district court judges, Your Honor. But his argument is, and I see I'm out of time, but if I could just summarize. His argument is this vindication argument, that he will now be vindicated. But I think that vindication argument proves too much. I mean, if being vindicated is enough, then every time a judge was overturned on summary judgment or preliminary injunction or directive verdict by this court, that he would think that court would say, well, I need to be vindicated by fudging the trial, Your Honor. Thank you, counsel. Your time has expired. Thank you, Your Honor. Mr. Carmich, you have some reserve time. Thank you. Quickly on the 28J letter, we moved to strike as being procedurally improper. I think our letter spells out those arguments. But I would also note that even if you did consider this, I would look to Leslie v. Grupo, ICA, in which you can have contradictory out-of-court statements and you would still credit the sworn declaration that Manley submitted in this case as enough to get over summary judgment. So I think it's improper to consider that. But even so, his testimony here is enough. And it's corroborated by the record as well. You look at the video, you see a completely unnecessary kick of his cellmate while the cellmate is laying on the ground and being restrained by two other officers. Injuries. I gather, counsel, your point is even if we think that your client is going to lose his case big time, ultimately. Yes. The question here is, did the trial judge have the right to determine material facts, what he did, how he did it, or does it have to go back and go through the rest of the process and Mr. Manley may lose. But nonetheless, he's entitled to that process. That makes a bigger point. That's exactly right. And I think that's what this court in Leslie says. We understand doubts that the district court has about the ultimate success of trial, but that's why we have trials. And if you think that, I wouldn't want you on the jury. But that doesn't mean we shouldn't have trials. And just quickly on the grievance point, I think there's a lot of new arguments that were made in oral argument holding Manley to a really high standard of what he needs to put in his pro se briefs below and also what he needs to put in the grievance. And I don't think that this court requires that type of specificity and, in fact, rejected a higher standard in the Reyes case. Thank you. Thank you, counsel. Your time has expired. I just want to ask you about the pro bono. Yes. Thanks to you all for doing that. Usually the presiding judge will vote. Thank you very much. Appreciate it. I do want to say on behalf of the panel and on behalf of the court, we very much appreciate your willingness to take this case pro bono. It's been my pleasure, and I'd also like to thank the Ninth Circuit staff. It's been wonderful and excellent, and also the support I've received from Dave's book has been great. Thank you. Very well. Thank you very much. The case just argued will be submitted for decision.
judges: O'scannlain, Gould, M. Smith